**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHARLES REY AND JEFFREY C. DAN, ) <br> ) <br> Plaintiffs-Appellants, ) <br> ) <br> v. ) <br> ) <br> ) <br> VERTRUE INCORPORATED, f/k/a ) <br> MEMBER WORKS, INCORPORATED, ) <br> ) <br> Defendants-Appellees-Cross-Appellants.) | Case No. 1:12 CV 10146 <br> Hon. Marvin E. Aspen |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us are cross-appeals stemming from the bankruptcy court's imposition of sanctions in this matter. Charles Rey and Jeffrey C. Dan's (collectively, "Appellants") challenge the bankruptcy court's determination that they violated 28 U.S.C. § 1927 and Rule 9011, while Vertrue Incorporated ("Vertrue" or "Appellee") challenges the amount of sanctions awarded in its favor. For the reasons set forth below, we affirm the decision of the bankruptcy court in all respects and deny Vertrue's cross-appeal for additional attorneys' fees.

### BACKGROUND

The underlying facts and procedural context are detailed in the bankruptcy court's Order of December 2, 2011. (12/2/11 Order at 1–2, Adv. Dkt. No. 124.) For purposes of this ruling, we summarize the pertinent facts.

Charles Rey ("Rey") was president of marketing company Heartland Direct, Inc. ("Heartland") and in 1993 entered into a commission contract with Vertrue. (*Id.* at 1.) Under the agreement, Heartland served as a broker for Vertrue by marketing programs to Heartland clients, primarily oil companies. *Id.*

Several of the oil companies began to market Vertrue's programs to their credit card customers. (*Id.* at 1.) The oil companies and Vertrue entered into contracts under which the oil companies purchased Vertrue's programs and then paid Vertrue fees. (*Id.* at 2.) Vertrue then paid Heartland a commission. (*Id.*) The only exception to this model was Vertrue's relationship with Chevron, which had a contract directly with Heartland. (*Id.*) There, Heartland sold Vertrue's programs to Chevron, deducted its own commission, and sent the remaining funds to Vertrue. As the bankruptcy court succinctly notes, "payments in the Heartland-Vertrue relationship moved in two directions. On Chevron sales, Heartland paid Vertrue; on other oil company sales, Vertrue paid Heartland." (*Id.*)

The relationship between Vertrue and Heartland was uneventful until 1999 when Heartland failed to pay Vertrue $148,000.00 due in Chevron sales. (*Id.* at 2.) In response, Vertrue stopped paying commissions due Heartland in January 2000. (*Id.*) Instead, Vertrue offset those commissions due Heartland against the unpaid Chevron funds. (*Id.*) For the next two years, the amount due to Vertrue steadily increased. In an exchange of letters spanning several years, the parties bickered about the amount due to Vertrue. (*Id.*) Finally in September 2003, after no resolution was reached, Vertrue declared a breach of the agreement. (*Id.*) Vertrue then filed suit against Heartland and Rey in Connecticut state court. (*Id.*)

The action in Connecticut hastened bankruptcy filings by Heartland and later Rey. In 2008, Rey filed an adversary proceeding claiming he was due $ 14 million from Vertrue. (*Id.*) Prior to a trial held in January 2011 Vertrue filed two unsuccessful motions: a motion for partial summary judgment and a Rule 16© motion, attempting to limit potential damages. (*Id.*) In a letter sent July 21, 2010, six months prior to trial, Vertrue alerted Rey's attorney, Jeffrey Dan ("Dan") to its intent to seek sanctions should the claim continue. (*Id.*) In a post-trial oral ruling

on June 1, 2011, the court found in favor of Vertrue. The court concluded that Heartland was the first to breach the contract and, thus, that Vertrue was entitled to cease performance. (*Id.*)

Seven weeks after judgment, Vertrue filed a motion for sanctions against Rey and Dan under Bankruptcy Rule 9011 and 28 U.S.C. § 1927. (Adv. Dkt. No. 118.) In its December 2, 2011 Order, the bankruptcy court imposed sanctions against Dan since "evidence showed unequivocally that some time in 1999 or early 2000, Heartland breached its agreement with Vertrue by failing to pay $148,000 due Vertrue." (12/2/11 Order at 6.) The bankruptcy court held that the breach of contract claim had no factual basis whatsoever. The court emphasized that "in an extensive series of letters from June 2002 through September 2003, the parties squabbled continually about monies owed" but that "[n]ot once in any of those letters, however, did Heartland deny that it owed Vertrue money." (*Id.*) Thus there was "no factual basis *at all*" for Heartland to assert a breach of contract claim against Vertrue. (*Id.*)

The court concluded that Rey should be sanctioned because he demonstrated "obvious intelligence." Rey admitted at trial that Heartland owed and failed to pay Vertrue $148,000 on Chevron sales and that Heartland's failure to pay took place prior to Vertrue's cessation of commissions owed on other oil company sales. (*Id.* at 10.) Further, Rey "never asserted that Vertrue owed Heartland anything." (*Id.*) The court held that Rey had no reason to believe that his claim would be successful.

In the December 2011 order, the court requested that both parties brief the court on what sanctions should be awarded. (*Id.* at 11.) Vertrue submitted a memorandum seeking $276,634.95 in attorneys' fees and $3,496.46 in costs. (Adv. Dkt. No. 127.) In support of its request, Vertrue submitted time entries and an affidavit stating that Vertrue had paid all attorneys' fees in full. (11/13/12 Order at 6, Adv. Dkt. No. 154.)

3

Using the lodestar method for its calculations, the bankruptcy court awarded Vertrue $193,130.85 in attorneys' fees and costs against Dan pursuant to § 1927. (*See* 11/13/12 Order at 16.) The court also awarded Vertrue $25,000.00 as Rule 9011 sanctions against Rey. (*Id.* at 22.) The imposition of sanctions and the amounts awarded prompted the present appeal and cross-appeal.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a), we have jurisdiction to review bankruptcy court decisions. *In re Brittwood Creek, LLC,* 450 B.R. 769, 773 (N.D. Ill. 2011). We will review the bankruptcy court's findings of fact for clear error and will review de novo its conclusion of law. *Stamat v. Neary,* 635 F.3d 974, 979 (7th Cir. 2011); *In re Supreme Plastics, Inc.*, 8 B.R. 730, 734 (N.D. Ill. 1980). "[W]here the Bankruptcy Code commits a decision to the discretion of the bankruptcy court," however, "that decision is only reviewed for an abuse of that discretion." *Belson v. Olson Rug Co.,* 483 B.R. 660, 664 (N.D. Ill. 2012); *see Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 399–405, 110 S. Ct. 2447, 2457–60 (1990) (holding that appellate review is deferential with regards to sanctions). We thus review the bankruptcy court's award of fees under § 1927 and imposition of Rule 9011 sanctions for an abuse of its discretion. *See Walter v. Fiorenzo,* 840 F.2d 427, 433 (7th Cir. 1988); *see also Matter of Excello Press, Inc.,* 967 F.2d 1109, 1112 (7th Cir. 1992).

Under the abuse of discretion standard, the bankruptcy court's determination will not be disturbed on appeal so long as it has a "basis in reason." *Marcus v. Shalala,* 17 F.3d 1033, 1037 (7th Cir. 1994); *see In re Volpert*, 186 B.R. 240, 245 (N.D. Ill. 1995). An abuse of discretion has occurred only when no reasonable person could "take the view adopted by the lower court." *Nanetti v. Univ. of Ill. at Chi.,* 867 F.2d 990, 995 (7th Cir. 1989); *see Fiorenzo,* 840 F.2d at 433

4

(stating that "the relevant inquiry is not how the reviewing judges would have ruled if they had been considering the case . . . but rather, whether any reasonable person could agree with the district court").

## ANALYSIS

I. **CHALLENGES ON APPEAL TO THE IMPOSITION OF SANCTIONS**

   A. **The bankruptcy court did not abuse its discretion when it sanctioned Jeffrey C. Dan under § 1927.**

Under § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Seventh Circuit has held that bankruptcy courts, as well as district courts, may impose sanctions under § 1927. *Adair v. Sherman,* 230 F.3d 890, 895 n.8 (7th Cir. 2000). The bankruptcy court's award under § 1927 is discretionary and is reviewed subject to the abuse of discretion standard. *Fiorenzo,* 840 F.2d at 433 (holding that an award of fees under § 1927 is given to the discretion of the court and so the standard of review is deferential); *see Kotsilieris v. Chalmers,* 966 F.2d 1181, 1183 (7th Cir. 1992).

Under § 1927, an attorney's conduct is "vexatious" if the attorney pursues the claim in either subjective or objective bad faith. *Dal Pozzo v. Basic Mach. Co.,* 463 F.3d 609, 614 (7th Cir. 2006). Objective bad faith "does not require a finding of malice or ill will; reckless indifference to the law will qualify." *Id.* If an attorney pursues a claim that a reasonably careful attorney would have known to be unsound, the conduct is objectively unreasonable. *See Riddle & Assoc. P.C. v. Kelly,* 414 F.3d 832, 835 (7th Cir. 2005); *see also Dal Pozzo,* 463 F.3d at 614.

In the present case, the bankruptcy court sanctioned Dan for pursuing a breach of contract claim lacking any plausible factual basis. As the court stated, the evidence

5

unequivocally demonstrated that Heartland first breached the agreement with Vertrue and that, despite the many exchanges disputing the amount owed, Heartland never denied owing Vertrue money. (12/2/11 Order at 6.) Dan argues that the bankruptcy court's decision to award sanctions was based on an "over-simplistic assessment of the evidence." (Appellants Br. at 23, Dkt. No. 19.) In support of his argument, Dan spends multiple pages rehashing the facts of the case in an attempt to demonstrate the strength of his and Rey's positions. Although the plausibility of the original claims is at issue, Dan largely discusses issues we need not address because they were not properly or previously raised. Dan further fails to demonstrate that the bankruptcy court abused its discretion in determining there was no factual basis for Appellants' claim.

Dan additionally argues that a colorable claim for accounting exists because there were "mutual and complicated accounts," which is a fact that "cannot be seriously disputed." (Appellants Br. at 37.) According to Dan, because a colorable claim for accounting exists, the bankruptcy court abused its discretion in concluding that the contract claim lacked any plausible factual basis. An "accounting" is an adjustment of the parties' accounts and a rendering of judgment for the balance calculated to be due. *Mankert v. Elmatco Prods., Inc.,* 84 Conn. App. 456, 460–61, 854 A.2d 766, 769 (Conn. App. Ct. 2004); *see, e.g.*, *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 577 (7th Cir. 2004) (noting that in a contract case, "the court can order an equitable accounting if the computation of damages involves complexities that would baffle a jury"). (*See also* Tr. of 6/1/11 Hrg., Adv. Dkt. No. 117, at 21–23 (holding that Connecticut law applies to this claim).) An accounting is not available, however, if the amount due in an action is readily ascertainable. *Mankert*, 84 Conn. App. at 460–61, 854 A.2d at 769. The bankruptcy court held that an accounting was not warranted because the evidence clearly showed Heartland

breached the contract with Vertrue. (Tr. of 6/1/11 at 21.) Because the bankruptcy court ruled, and we agree, that Heartland unequivocally breached the contract with Vertrue, there is no reason for an accounting. As readily established, there was *no amount* due Heartland. For its part, Vertrue did not seek an accounting to ascertain any amounts due. The bankruptcy court did not abuse its discretion in rejecting Dan's arguments.

Dan further argues that, had the case so lacked any factual basis, Vertrue should have moved for a directed finding or Vertrue's two potentially dispositive motions should have been granted. As the bankruptcy court explained, Vertrue's decision not to make a particular motion was a strategic choice with no bearing on the request for sanctions. (12/2/11 Order at 7.) The two potentially dispositive motions were limited in scope, both efforts to limit the damages Rey could recover. We agree with the bankruptcy court that its assessment of the merits of those motions "says nothing about whether there was any basis for asserting a breach on Vertrue's part." (*Id.*)

Dan's final argument is that sanctions are improper because the bankruptcy court did not find that the objection to Vertrue's claim violated either Rule 9011 or § 1927. This contention lacks merit, however, because the bankruptcy court did not impose sanctions based on the objection to Vertrue's claim. Rather, the bankruptcy court imposed sanctions due to Dan's conduct in pursuing the unfounded affirmative demand for millions in damages. (*See, e.g.*, 11/13/12 & 12/2/11 Orders.)

In short, we concur with the bankruptcy court that there was "no factual basis *at all* for asserting that Vertrue breached the agreement with Heartland," as evidenced by the parties' correspondence and Heartland's undisputed initial breach that excused Vertrue from further performance. We conclude that the bankruptcy court did not abuse its discretion in determining

7

that Dan pursued a baseless and thus vexatious claim. Neither, then, did the bankruptcy court abuse its discretion in sanctioning Dan under § 1927.

> **B.** **The bankruptcy court did not abuse its discretion when it sanctioned Charles Rey under Rule 9011.**

Appellants next challenge the imposition of sanctions personally against Charles Rey. Unlike § 1927, Rule 9011 permits sanctions against parties represented by counsel. *See* Fed. R. Bankr. P. 9011©. Sanctions against a client may be warranted if, based on the facts known to him, he could not have reasonably believed that the evidence supported his claim. *See Senese v. Chi. Area I.B. of T. Pension Fund,* 237 F.3d 819, 824 (7th Cir. 2001). "[O]n appeal we review the bankruptcy court's imposition of Rule 9011 sanctions for abuse of discretion." *Matter of Excello Press, Inc.,* 967 F.2d at 1112; *see Cooter & Gell*, 496 U.S. at 384. Rule 9011 of the Federal Rules of Bankruptcy Procedure is analogous to Rule 11 of the Federal Rules of Civil Procedure, such that case law interpreting Rule 11 is useful when applying Rule 9011. *See Matter of Excello Press, Inc.*, 967 F.2d at 1111; *see also In re Collins*, 250 B.R. 645, 659 (Bankr. N.D. Ill. 2000).

Appellants contend that Vertrue failed to comply with a procedural prerequisite to its sanctions motion. Rule 9011 offers a "safe harbor" period, which requires the party that intends to seek sanctions to send a warning letter, or a copy of its proposed motion, to the allegedly offending party at least twenty-one days before the motion is actually filed. Fed. R. Bankr. P. 9011(c)(1)(A); *Nisenbaum v. Milwaukee Cty.*, 333 F.3d 804, 808 (7th Cir. 2003); *In re McNichols*, 258 B.R. 892, 902–03 (Bankr. N.D. Ill. 2001). This advance notice gives a party in violation of Rule 9011 the opportunity to withdraw its offensive pleading and avoid sanctions. *Fabriko Acquisition Corp. v. Prokos,* 536 F.3d 605, 610 (7th Cir. 2008); *Nisenbaum*, 333 F.3d at 808; *In re McNichols*, 258 B.R. at 902. Here, the parties agree that a warning letter can comply

8

with the safe harbor requirement under Seventh Circuit precedent, but they dispute whether Vertrue's letter did so. (Appellants Br. at 43.) *See Matrix IV, Inc., v. Am. Nat. Bank and Trust Co. of Chi.,* 649 F.3d 539, 552 (7th Cir. 2011).

On July 21, 2010, counsel for Vertrue sent a letter to Dan, pursuant to Rule 9011, outlining the evidentiary deficiencies of Rey's case and asserting its frivolousness. (Adv. Dkt. No. 118-1.) Although Appellants contend that this warning letter "did not fulfill the purpose of Rule 9011," (Appellant Br. at 43), we disagree. As the Seventh Circuit held in *Matrix IV*, a warning letter is sufficient if it alerts the opposing party to the intent of the party seeking sanctions. 649 F.3d at 552 n.5. There, the court found the defendant's warning letter provided adequate notice even though it did not mention the claim preclusion argument that had prevailed. *Id.* Vertrue's letter, sent six months prior to trial, unequivocally informed Appellants that it would seek sanctions because "there is no continuing evidentiary support for Mr. Rey's claim." (Adv. Dkt. No. 118-1.) Similar to *Matrix IV*, we find that the letter sent by Vertrue meets the safe harbor standards.

Appellants relatedly argue that, absent a more claim-specific warning letter, both Rey and Dan were justified in believing there was a colorable claim that Vertrue, and not Heartland, was the first to breach. As previously discussed, the bankruptcy court emphasized Rey's "obvious intelligence" and his admission at trial that Heartland failed to pay Vertrue on Chevron sales. (12/2/11 Order at 10.) Heartland failed to pay the amount due to Vertrue prior to Vertrue's own cessation of commissions. Rey thus either knew, or should have been aware, that no plausible breach of contract claim existed as Heartland, not Vertrue, breached the contract first. Further, Rey "never asserted that Vertrue owed Heartland anything." (*Id.*) Even absent a claim-specific warning letter, Rey was or should have been aware, at the time the adversary

9

proceeding was filed, that he had no evidence to support his claim. As the bankruptcy court stated, Rey's claim was "instigated as a gamble that something might come of it rather than on the basis of the facts at hand." *Johnson v. A.W. Chesterton Co.,* 18 F.3d 1362, 1366 (7th Cir. 1994). We agree with this assessment and the bankruptcy court's conclusion.

Moreover, in addition to receiving adequate warning, Appellants had an independent responsibility to continually evaluate their claim in light of new developments. *Samuels v. Wilder,* 906 F.2d 272, 275 (7th Cir. 1990). Had they done so in this case, Appellants would have realized early on that their claims lacked sufficient evidence, and they could have avoided sanctions. The July 21, 2010 letter, along with Appellants own responsibility to objectively evaluate their claims, provides ample notice to satisfy the safe harbor provision. Because Rey was or should have been aware that he lacked any evidence to support his breach of contract claim, and because Vertrue complied with the safe harbor requirement, the bankruptcy court did not abuse its discretion in sanctioning Rey under Rule 9011.

### C. The sanctions issued under § 1927 and Rule 9011 are not excessive.

Trial courts have wide latitude in deciding whether conduct is sanctionable. *Samuels*, 906 F.2d at 276. This discretion "extends as well as to the selection of the sanction." *Id.*; *see Jimenez v. Madison Area Technical Coll.*, 321 F.3d 652, 657 (7th Cir. 2003) (holding that a trial court has "significant discretion in determining what sanctions" should be imposed). Sanctions imposed in a case should be tailored to individual circumstances and "must protect the litigants and possible future clients from further misfeasance" as well as have a "deterrent effect . . . within the bar." *U.S. v. Stillwell,* 810 F.2d 135, 136 (7th Cir. 1987); *see Ambati v. Reno,* 2 F. App'x 500, 501 (7th Cir. 2001).

#### I. Attorneys' Fees Award against Dan under 28 U.S.C. § 1927

Appellants argue that the bankruptcy court abused its discretion in awarding attorney's fees for the entire adversary case because it was beyond the "least severe sanction the court could have imposed." (Appellant Br. at 47.) Yet this argument mischaracterizes the law. The Seventh Circuit has held that the least severe sanction *that will serve its purpose* should be imposed. *See Vollmer v. Publishers Clearing House*, 248 F.3d 698, 710–711 (7th Cir. 2001). Thus the standard for sanctions is not the "least severe" amount but the appropriate amount determined by the trial court to achieve the objective of deterrence while protecting litigants from future misfeasance.

Further, Appellants' argument regarding the "least severe sanction" is misplaced. Section 1927 is a fee-shifting statute under which the court is permitted to award "reasonably incurred" attorneys' fees as a result of the opposing attorney's sanctionable conduct. 28 U.S.C. § 1927. The bankruptcy court may award attorneys' fees reasonably incurred during the defense of a baseless suit. Nowhere in § 1927 is the court instructed to consider the "least severe sanction." The standard in an award of attorneys' fees under § 1927 is reasonableness as to hours expended, not severity of the sanction. And as discussed below with respect to Vertrue's cross-appeal, we find the bankruptcy court's award of attorneys' fees eminently reasonable.

Appellants also question the bankruptcy court's very ability to shift fees as an appropriate sanction. But fees "can and should be shifted whenever that represents the 'appropriate sanction.'" *Brandt v. Schal Assocs., Inc.,* 131 F.R.D. 512, 519 (N.D. Ill. 1990) *aff'd*, 960 F.2d 640 (7th Cir. 1992) (*quoting Cooter & Gell,* 496 U.S. at 392, 110 S. Ct. at 2454). Here, the bankruptcy court did not actually "shift fees" in this case to the extent Vertrue requested. Vertrue sought $276, 634.95 in attorneys' fees and the court allowed it to recover only $193,130.85 from Dan. For these various reasons, Appellants' arguments fall flat.

### ii.     *Rule 9011 Sanctions against Rey*

Additionally, we find the bankruptcy court did not abuse its discretion when sanctioning Rey under Rule 9011. Vertrue had requested 100% of its attorneys' fees as a sanction. As a result, the parties focused largely on lodestar questions when addressing the potential Rule 9011 sanctions. (11/13/12 Order at 18.) The court lamented that "the parties unfortunately offer little guidance on how deterrence and equitable considerations should alter the lodestar amount here." (*Id.*) The court therefore engaged in its own evaluation of three statutory purposes underlying the imposition of a sanction: compensation, punishment, and deterrence. (*Id.* at 17.) The court concluded that the evidence did not support the full award sought by Vertrue and focused its analysis on the goal of deterrence. (*Id.* at 18–21.)

In considering what award would be appropriate to deter future misconduct, the bankruptcy court considered Rey's actions in filing and relentlessly pursuing a baseless claim. The court characterized the underlying claim as "sheer fantasy" and Rey's testimony at trial as "unworthy of belief." (11/13/12 Order at 20.) To deter Rey from "roll[ing] the litigation dice" in the future, the bankruptcy court concluded that an award of sanctions in the amount of $25,000 was necessary. The court explained that this substantial amount was warranted due to Rey's lack of long history and good reputation with the court, in contrast with Dan whose "strong incentive as an attorney practicing in this district" encouraged him to desist from future misconduct. (*Id.* at 21.) We agree with the bankruptcy court that, based on the trial evidence and his own testimony, Rey could not have honestly believed his claim would prevail. Under all these circumstances, the bankruptcy court did not abuse its discretion in imposing the $25,000 sanction to deter Rey from abusing the court system in the future. (*See id.* at 21 (sanctioning

Rey "to ensure he gets the message that a court is not simply a place where a person can take a flyer at his pet theory *du jour* on the off-chance he hits the jackpot").)

## II. CHALLENGES ON CROSS-APPEAL TO THE AMOUNT OF SANCTIONS

### A. The bankruptcy court did not err by reducing the award of sanctions under 28 U.S.C. §1927 through use of the lodestar method.

Section 1927 allows the court to award "the excess costs, expenses, and attorneys' fees . . . reasonably incurred" due to the opposing party's sanctionable conduct. 28 U.S.C. § 1927. Although little instruction is given on how a court decides which fees were "reasonably incurred," the Seventh Circuit has held that "a [trial] court should determine the reasonable number of hours expended and the reasonable hourly rate for such expenditures." *Kotsilieris,* 966 F.2d at 1181. This approach is commonly known as the lodestar method. The trial court's award of attorneys' fees is reviewed for an abuse of discretion and, "we review de novo the district court's legal conclusions and methodology for calculating the award." *Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir. 2010) (internal citations omitted). A trial court's ruling on what constitutes reasonable attorneys' fees is rarely disturbed. *Kotsilieris,* 966 F.2d at 1187.

Appellee argues that the bankruptcy court erred by reducing the award of sanctions under § 1927 by using the lodestar method. Under the lodestar method, a trial court determines appropriate attorneys' fees by "multiplying a reasonable hourly rate by the numbers of hours reasonably expended" and "[i]f necessary, the [trial] court has the flexibility to adjust that figure." *Gastineau,* 592 F.3d at 748. Applying this method, the bankruptcy court found that $193,130.85 in attorneys' fees, costs, and expenses were reasonably incurred.

Appellee contends the court's reliance on the lodestar method was error under *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp,* 73 F.3d 150, 153 (7th Cir. 1996), which held that "the best guarantee of reasonableness is willingness to pay." According to Vertrue,

13

because it paid its attorneys' fees in full, the bankruptcy court should have accepted those fees as reasonable. Case law, however, reveals the fairly widespread use of the lodestar method in calculating reasonably incurred attorneys' fees in this circuit. *See, e.g. Kotsilieris,* 966 F.2d at 1187 (holding that when calculating attorneys' fees a trial court "should determine the reasonable number of hours expended and the reasonable hourly rate for such expenditures"); *Gastineau,* 592 F.3d at 748 (calling the lodestar method "the touchstone . . . for calculation of attorney's fees"); *Tillman v. New Line Cinema Corp.,* No. 05 C 910, 2008 WL 5427744, at *8 (N.D. Ill. Dec. 31, 2008). Consistent with these other authorities, we do not find that the bankruptcy court erred in utilizing the lodestar method.

> **B.** **The bankruptcy court did not abuse its discretion in disallowing and reducing the amounts of attorneys' fees paid by Vertrue.**

The lodestar method used by the bankruptcy court entitles the petitioning party to compensation for time "reasonably expended." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983). The party seeking fees bears the burden of proving the "reasonableness of the hours worked." *Tillman,* 2008 WL 5427744, at *8 (*quoting Spegon v. Catholic Bishop of Chi.,* 175 F.3d 544, 550 (7th Cir. 1999)). When the fee petition is inadequately documented or vague, a trial court may reduce the suggested fee by a reasonable percentage. *Harper v. City of Chi. Heights*, 223 F.3d 593, 605 (7th Cir. 2000); *see also Hensley,* 461 U.S. at 433, 103 S. Ct. at 1939. The trial court is required to provide a clear explanation of reasons for its fee award or reductions. *Ohio-Sealy Mattress Mfg. Co. v. Sealy,* 776 F.2d 646, 658 (7th Cir. 1985). With these principles in mind, we briefly consider Vertrue's challenges to the bankruptcy court's reduction of its award.

> **I.** *Time Entries Lacking Specificity*

Appellee argues that the bankruptcy court abused its discretion in disallowing what it found to be "vague" or "block–billed" time entries. Vertrue cites *In the Matter of Synthroid Marketing Litigation.,* 264 F.3d 712, 722 (7th Cir. 2001), for the proposition that, if an attorney submits a bill with the level of detail that a paying client finds sufficient, "a federal court should not require more." Vertrue's argument overlooks the fact that this more relaxed requirement of specificity is not applicable under a fee-shifting statute such as § 1927. The court in *Synthroid* dealt with attorneys' fees as they pertained to a settled class action suit. In its analysis, the *Synthroid* court relied on *Medcom Holding Co. v. Baxter Travenol Labs., Inc.,* 200 F.3d 518, 520 (7th Cir. 1999), which itself distinguishes between attorneys' fees awarded as part of a contractual indemnity and those awarded under a fee-shifting statute. As the Seventh Circuit explained in *Medcom Holding Co.*, "[i]temization is required under fee-shifting statutes, at least when the judge employs the 'lodestar' method." 200 F.3d at 520. Thus, while "the Seventh Circuit has adopted a market-based approach," *O'Sullivan v. City of Chi.*, 484 F. Supp. 2d 829, 834 (N.D. Ill. 2007), itemization is required under the lodestar method, as here.

Appellee takes particular issue with those time entries disallowed due to the bankruptcy court's finding that they were "vague," "block-billed," or "lumped." Appellee argues that the bankruptcy court rejected entries it found "vague" for unspecified reasons. The record indicates otherwise. The bankruptcy court disallowed those entries it found vague for several reasons. The rejected entries lacked necessary information, such as to whom or why correspondence was sent and what work was done on a motion. In addition, the court also struck entries for time spent on unspecified meetings. (11/13/12 Order at 9.) We find that the bankruptcy court has provided a clear and concise explanation for the reasons it reduced certain vague time entries.

15

As to those entries disallowed because they were "block-billed" or "lumped," Vertrue again asserts that if a client finds the level of detail satisfactory and pays the attorneys' fees, the district court should not require more. Yet § 1927 permits an award only of those fees "reasonably incurred," and lumped time entries prevent a court from determining whether time spent on individual items was reasonable. *In re Lund,* 187 B.R. 245, 251 (Bankr. N.D. Ill. 1995). Lumped time entries may be denied entirely or reduced by a certain percentage. *Id.* As the bankruptcy court did not choose the more severe action of disallowing lumped entries entirely, instead reducing them by 50%, we do not find that it abused its discretion. *See In re Adventist Living Ctrs., Inc.,* 137 B.R. 701, 706 (Bankr. N.D. Ill. 1991) (reducing lumped fees by fifty percent).

### ii. *Time Entries Related to the Partial Summary Judgment Motion*

Vertrue also appeals the bankruptcy court's refusal to award fees in connection with its unsuccessful motion for partial summary judgment. Vertrue asserts, as the bankruptcy court indicated in its November 2012 Order, that fees may be awarded for losing arguments in support of a successful claim. (*See* 11/13/12 Order at 10.) As Vertrue correctly states, the lodestar method focuses "on the overall success of a [party] rather than the success or failure of each of the [party's] causes of action." *Jaffee v. Redmond,* 142 F.3d 409, 414 (7th Cir. 1998). The touchstone in a case where an argument is lost but the claim is won is "not whether a particular argument was successful, but rather whether it was reasonable." *Id.*

Nevertheless, the bankruptcy court disallowed Vertrue's time spent on the summary judgment motion because it held that the motion was unnecessary. The bankruptcy court made the distinction, which Appellee does not, between unsuccessful arguments and unnecessary arguments. As evidenced by the award of fees for the failed Rule 16© motion, the bankruptcy

court did not disallow fees for all unsuccessful motions as a rule but only for those deemed "unnecessary." The bankruptcy court found the motion unnecessary because "even a modicum of research would have disclosed" that it should never have been filed as it was the wrong vehicle for the argument advanced. (11/13/12 Order at 11.) The Rule 16© motion, however, was the "right procedural vehicle for the argument" and, though ultimately unsuccessful, was still reasonable. (*Id.*) We find this distinction logical and conclude that the bankruptcy court did not abuse its discretion in disallowing fees for the partial motion for summary judgment.

## CONCLUSION

The bankruptcy court's Orders of December 2, 2011 and November 13, 2012 awarding sanctions against Dan and Rey in the amounts of $193,130.85 and $25,000.00, respectively, do not constitute abuses of discretion. Accordingly, the orders are affirmed. In light of both parties' relative lack of success on these cross-appeals, we deny Appellee's request for costs under Bankruptcy Rule 8014. *See In re Universal Foundry Co.*, 163 B.R. 528, 542–43 (E.D. Wis. 1993) (concluding under similar circumstances that "the better exercise of discretion is to let each party bear [their] own costs on this appeal and cross-appeal"). It is so ordered.

                                            Honorable Marvin E. Aspen
                                            United States District Judge

Dated:       Chicago, Illinois
               September 3, 2013